UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06-CR-9

UNITED STATES OF AMERICA                                        PLAINTIFF

v.

RANDALL H. BURCHARD                                             DEFENDANT

### MEMORANDUM OPINION

Defendant filed a Motion to Suppress various evidence in the trial of this matter. (Docket # 31). The prosecution filed a Response. (Docket # 37). A suppression hearing was held in two parts on May 7, 2007, and June 14, 2007. The matter is now ripe for adjudication. The Court now GRANTS IN PART and DENIES IN PART Defendant's Motion to Suppress.

### RELEVANT FACTS

**Morning of October 13, 2005**

On the morning of October 13th, 2005, Defendant Burchard first contacted the police from the Hickory House Lodge in Paducah, Kentucky. He called to report the theft of five hundred dollars by a woman known as Nicole. Burchard had spent time with both Nicole and Kim Pace the previous evening and had allegedly engaged in the use of cocaine with the women.

Officer White responded to Burchard's call. Though Nicole had left the Hickory House, Burchard hoped to locate her at a residence on South Fourth Street in Paducah. Burchard drove to the residence and Officer White followed him. During the trip to South Fourth Street, Officer White called Detective Tolliver because he suspected that drug use might be involved in the situation. Detectives Tolliver and Neal arrived at South Fourth Street. Nicole was not at South

Fourth Street at that time. Officer White did notice a Ruger handgun located in Burchard's car that morning. He examined it and returned the gun to Burchard. The officers did not detain Burchard at the Hickory House or at South Fourth Street. After Burchard declined to file a formal report on the theft, the officers left the scene.

**Afternoon of October 13th**

On the afternoon of October 13th, 2005, around 1:00 p.m., a confidential informant reported drug dealing at a residence on Nineteenth Street in Paducah; in particular, the informant alleged that Burchard was at the residence and had purchased six to eight balls of cocaine. Detective Neal responded to the call after discovering that the informant had previously worked with other officers and had provided reliable information. On the basis of the informant's report, Detective Neal prepared a search warrant for the residence at Nineteenth Street, including a search of Burchard's vehicle.[1] Officer White, Detective Aycock, and Detective Young all reported to Nineteenth Street to investigate.

During the investigation of the residence at Nineteenth Street, Officer White notes that Burchard was told he was not free to leave because he was necessary to the investigation. Detective Aycock explained to Burchard, however, that he was only detained, not under arrest.

---

[1] Burchard claims that the informant was not reliable because she was a diagnosed schizophrenic, had used drugs the previous evening, and claimed not to have slept for three days at the time of the report. Furthermore, the defense alleges that the officers should have known that Burchard could not buy drugs if his money was, in fact, stolen as he had reported that morning. However, this information was not known to Officer Neal at the time he prepared an affidavit for a search warrant. He believed the informant to be reliable because of her previous reliable reports to other law enforcement officers. Because Officer Neal had a reasonable belief of the informant's reliability, his reliance on her statements was proper.

2

When Burchard was questioned about drugs, he claimed that he "knew drugs would come up" but denied possession or use of drugs. During the investigation, Burchard told Officer White and Detective Aycock that he wanted to speak to "Jim." Neither officer knew who "Jim" was, and Burchard did not clarify. Officer White told Burchard that he was not allowed to make phone calls at that time. This was to ensure officer safety, by preventing other individuals from coming to the scene of the investigation. When Burchard tried again to use his phone to call "Jim," it was taken away from him. Defendant claims that he was trying to call his attorney, Jim Brien. At the time that Burchard wanted to reach "Jim," the officers were questioning him about the earlier incident reported at the Hickory House Lodge and South Fourth Street, Burchard had not been read *Miranda* warnings, and Detective Aycock had clarified that Burchard was not under arrest.

      The investigation of the residence at Nineteenth Street revealed the evidence of drugs. An empty plastic baggie, of the type normally used in drug transactions, was found in a toilet in the home. This indicated that drugs may have been on the premises, but were flushed before they were discovered by the police. A drug dog at the investigation also found traces of cocaine on items in Burchard's truck. During the search of Burchard's truck, the officers also discovered Burchard's address was listed on his car registration as 408 Highway 2151, Melber, Kentucky. Though the officers had not observed any definite evidence that Burchard was under the influence of drugs that day, they placed him under arrest to investigate the report that he had engaged in a drug transaction, the report that he had used drugs the previous evening, and the traces of cocaine found in his car. At this time, Officer White transported him to the police station.

After his arrival at the police station, Burchard was handcuffed and secured in a room where he was interviewed by Detective Neal. At Nineteenth Street, before his arrest, Burchard agreed to speak with Detective Neal. Detective Neal read Burchard his *Miranda* warnings. Burchard responded,

> Oh, whoa, oh you know oh I am not going to be arrogant with you or nothing, you are a law enforcement agent and I am going to give you some respect regardless okay of whether I agree with you or not. When you'll first came in there I told you I would like to talk to my attorney but you didn't see it that way and you were the person in authority, I was not.

Detective Neal continued questioning Burchard at this point, because he had not been advised that Burchard had invoked his right to an attorney in the investigation of drug transactions at Nineteenth Street. Detective Neal believed that, despite Burchard's comments, he remained willing to talk to Detective Neal about the events at Nineteenth Street. During the interview, Burchard revealed that he resided at 408 Highway 2151, Melber, Kentucky, and that he had used marijuana and cocaine in the past.

At the time of the arrest, Detective Aycock advised Detective Tolliver to obtain a search warrant allowing drug testing of Burchard's blood and urine. While Detective Neal interviewed Burchard, Detective Tolliver prepared the affidavit and search warrant. He could not hear Detective Neal's interview with Burchard and prepared the warrant regardless of the content of the interview. The search warrant was prepared based on the reports that Burchard had been involved in recent drug use and drug transactions, as well as the presence of cocaine on objects in his vehicle. After his interview with Burchard, Detective Neal executed the search warrant for Burchard's blood and urine at Lourdes Hospital in Paducah on the evening of October, 13, 2005.

**October 28, 2005**

On October 20, 2005, an ATF agent applied for two search warrants: one to search 408 Highway 2151, Melber, Kentucky, and the other to search Burchard's vehicle. The information as to Burchard's address and prior drug use from Detective Neal's interview was cited in support of the search warrant. However, the agent also relied on information regarding Burchard's address obtained from his vehicle registration and other evidence in support of his drug use. The search warrant was granted and executed on October 28, 2005.

Special Agent Deir coordinated the search of 408 Highway 2151, Melber, Kentucky. When the officers arrived at the residence, Burchard's mother, Ruth Burchard, was present and Burchard was not. Shortly afterward, Burchard arrived. The officers did not detain Burchard at this time. He informed the officers that the residence belonged to his mother, and that he did not live there, but moved from place to place. After meeting the officers, Ruth Burchard said she understood why they were there and consented to their search of the residence. Burchard informed the officers that he had a firearm at the residence and showed them where it was located. The officers also found the holster for the Ruger previously discovered by Officer White located in Burchard's vehicle. When questioned about the gun, Burchard claimed that it had been stolen, but that he had not filed a report.

The officers located checking account slips which indicated that Burchard resided at 609 State Route 408 West, Hickory, Kentucky. Also, during the search, Burchard's brother, daughter, and niece arrived. All indicated that Burchard resided on State Route 408 West in a trailer behind the main house on his property. While the officers were interviewing Burchard's family members and executing the search warrants, Burchard left his mother's residence.

Officers requested that Burchard's daughter call him and ask him to return. While waiting for Burchard's return, Special Agent Deir began to prepare an affidavit in support of a search warrant for the entire property at 609 State Route 408 West, Hickory, Kentucky.

Because the officers knew that Burchard might go to his residence on State Route 408 West, Officer Jackson left Ruth Burchard's residence to investigate. Officer Jackson did not see Burchard on the property. He also found the trailer locked. Officer Jackson visited the house on the property and met Mr. and Mrs. Warren, Burchard's tenants, to explain to them about the investigation. Without searching the Warrens' home, Officer Jackson continued his investigation of 609 State Route 408 West, Hickory, Kentucky.

During that time, Burchard returned to Ruth Burchard's residence. Special Agent Deir then informed Burchard that the officers knew about his residence at 609 State Route 408 West. Burchard admitted to receiving mail there. At that point, Special Agent Deir read Burchard his *Miranda* warnings and placed him under arrest. Burchard responded that he would like his attorney present before he answered any questions. Special Agent Deir then informed Burchard that they would obtain a search warrant for the entire property at 609 State Route 408 West, without questioning Burchard. Burchard voluntarily informed Special Agent Deir that the Warrens were on the property and that they were Burchard's tenants. Special Agent Deir then questioned Burchard as to whether he had any firearms at the Warren's residence. Burchard admitted that he did.

While he continued his application for a search warrant for the residence at 609 State Route 408 West, Special Agent Deir contacted Officer Jackson and asked him to attempt to gain consent to search the Warrens' residence. The Warrens readily consented and showed Officer

Jackson firearms which Burchard had asked them to store for him.  Subsequently, Special Agent Deir obtained a warrant for the property at 609 State Route 408 West and searched the trailer on the property in the presence of Burchard, where more firearms were discovered.  Special Agent Deir notes that, regardless of whether Burchard admitted there were firearms on the property, he would have sought a search warrant for the entire property to attempt to locate the Ruger weapon that Burchard claimed was stolen.

    Defendant seeks to suppress all evidence obtained by the government as a result of allegedly illegal questioning of the Defendant outside the presence of his legal counsel on October 13, 2005, and October 28, 2005.  Defendant seeks to exclude any statements he made outside the presence of his legal counsel during his detention on October 13, 2005.  He also seeks to exclude the results of blood and urine tests conducted during his detention.  Furthermore, Defendant argues that firearms, ammunition, and other evidence obtained from his residence and the residence of Rupert Warren should also be omitted from evidence because they were obtained as the result of statements allegedly taken illegally on October 13, 2005, and October 28, 2005.

## STANDARD

    An individual in custody of law enforcement has the right request that interrogation cease until an attorney is present under the Fifth and Fourteenth Amendments of the United States Constitution. *Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981) (citing *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602 (1966)).  When a person in custody requests counsel, questioning cannot resume until either counsel is present or the person in custody voluntarily initiates a new dialogue with law enforcement authorities. *Wyrick v. Fields*, 459 U.S. 42, 45-46, 103 S.Ct. 394,

74 L.Ed.2d 214 (1982) (citing *Edwards*, 451 U.S. at 484-87). In order to resume questioning, the person in custody must knowingly and intelligently relinquish or abandon his or her known right to remain silent. *Edwards*, 451 U.S. at 482. The Court determines whether the waiver of the right to counsel is effective based "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The fruits of any questioning after a defendant has asserted his right to an attorney, and has not relinquished that right, must be excluded from evidence presented at trial. *Id.* at 487.

Courts have established an exception to this rule where there is an independent source of the evidence. If the prosecution can establish by a preponderance of the evidence that the evidence would have been obtained inevitably, regardless of any overreaching by the police, "there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings." *Nix v. Williams*, 467 U.S. 431, 447, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). *See also United States v. Leake*, 95 F.3d 409, 411-13 (6th Cir. 1996). In determining whether the search warrants would have been properly supported without the use of the unlawfully obtained evidence, the Court must examine "the sufficiency of the untainted affidavit to see if probable cause exists without the tainted information." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005).

## ANALYSIS

**Statements by Burchard on October 13, 2005**

Burchard first argues that all statements made by him in response to police questioning on October 13, 2005, at Nineteenth Street and at the police station should be excluded from evidence at trial because they were taken after he had been taken into custody and requested an attorney. Burchard claims that he first effectively invoked his right to counsel at Nineteenth Street when he told Detective Aycock and Officer White that he wanted to call "Jim." However, a request for counsel must be effectively communicated to the officers. *See Davis v. United States*, 512 U.S. 452, 462, 114 S.Ct, 2350, 129 L.Ed.2d 362 (1994) (The Court was "unwilling to... prevent police questioning when the suspect *might* want a lawyer"). Because Burchard did not inform Detective Aycock or Officer White that he wished to speak to an attorney or that "Jim" was an attorney, the Court cannot find that Burchard properly invoked his right to counsel at the time.

Burchard claims that he effectively asserted his right to an attorney at the police station during his interview with Detective Neal. The Court agrees. Burchard indicates that he intended to request an attorney before, and that he still would like the assistance of an attorney at the time. The prosecution argues that Burchard effectively waived his right to an attorney by telling Detective Neal that he would talk at Nineteenth Street. However, Burchard renewed his request for an attorney at the police station and did so clearly. Detective Neal testified that he believed that Burchard waived his right to an attorney by acknowledging Detective Neal's authority in the matter. The Court cannot agree that this is the type of knowing and intelligent relinquishment of a right to an attorney that is required by law. Therefore, the Court holds that Burchard's statements to Detective Neal made during the interview at the police station on October 13, 2005, are inadmissible at trial. This includes Burchard's admission that he has used cocaine and

marijuana in the past and that he resided at 408 Highway 2151, Melber, Kentucky.

**Search Warrant for Defendant's Bodily Fluids**

Burchard contends that the search warrant for his bodily fluids granted and executed on October 13, 2005, was based on statements unlawfully taken and is therefore improper. In particular, Burchard claims that Detective Tolliver based his affidavit in request for a search warrant on statements Burchard made to Detective Neal at the police station. However, Detective Tolliver revealed that he had no knowledge of the content of the interview between Detective Neal and Burchard at the time the affidavit seeking the search warrant was prepared. Instead the search warrant was granted based on probable cause of Burchard's drug use from the traces of cocaine located in his vehicle and reports of his use and purchase of cocaine. The Court holds that the warrant for Burchard's blood and urine testing was properly granted based on admissible evidence, and the results of the tests are admissible at trial.

**Search Warrant for 408 Highway 2151, Melber, Kentucky, and for Burchard's Vehicle on October 28, 2005**

Burchard argues that the warrants granted on October 20, 2005, and executed on October 28, 2005, allowing the search of Ruth Warren's residence and Burchard's vehicle were improper because they were based on unlawful testimony given by Burchard during his interview with Detective Neal. In fact the search warrants did cite to the information regarding Burchard's

address given during that interview. However, the information on which the warrant was based was simultaneously available from other sources. Ruth Burchard's address had already been identified as a potential residence of Burchard on October 13th, 2005, during the search of the Nineteenth Street residence and Burchard's vehicle. This information was discovered before and independent of Burchard's arrest and interview with Detective Neal on that day. Similarly, a search of Burchard's vehicle on October 13th, 2005, before his arrest and interview, revealed traces of drugs in his vehicle. This, in conjunction with reports that Burchard had used or purchased drugs on October 13, 2006, constituted cause to search the vehicle at a later date, regardless of the content of Burchard's interview with Detective Neal.

**Search of 609 State Route 408 West, Hickory, Kentucky, and Warren Residence on October 28, 2005**

Burchard contends that the firearms and ammunition discovered on his property at 609 State Route 408 West, Hickory, Kentucky, are inadmissible because the officers only discovered the existence of that residence through inadmissible statements unlawfully elicited from him. In particular, Burchard argues that the search warrant of his residence was granted based on his statements made to Special Agent Deir after being given his *Miranda* warnings. Burchard responded that he "might" want to have an attorney present before he answered questions. While this may be insufficient to properly invoke the right to counsel in some cases, *see, eg., Davis*, 512 U.S. at 462, it is clear that in this case, Special Agent Deir felt that Burchard did request counsel. At this time, Special Agent Deir informed Burchard that the residence would be searched, and

11

Burchard disclosed the presence of weapons at the residence. It is clear, however, that the location of the residence and the search of the residence was established before Burchard disclosed the presence of the weapons. Several relatives of Burchard's had confirmed that 609 State Route 408 West was Burchard's residence, as well as checking deposit slips. Officers were already on the scene, and Special Agent Deir was already preparing an application for a search warrant. Special Agent Deir indicated that a search would be necessary, even without Burchard's admission that firearms were on the property, because the Ruger firearm remained missing. The Court holds that the warrant to search Burchard's property at 609 State Route 408 West was properly granted and that the fruits of the search are admissible.

Lastly, Burchard claims that the search of the Warrens' residence was based solely on his potentially inadmissible admissions to Special Agent Deir that he stored weapons on the property. Burchard contends that Special Agent Deir and Officer Jackson would not have requested the Warrens' consent to search the residence without his admissions. However, Special Agent Deir knew, before Burchard's admissions, that Burchard owned the property in which the Warrens lived and had begun preparing a search warrant for the property at the time. The prosecution has shown, by a preponderance of the evidence that, based on the missing Ruger firearm and Burchard's control over the property, officers would have requested and received consent to search the Warrens' residence regardless of Burchard's statements. Therefore, the search of the Warrens' residence was proper, and the fruits of that search are admissible.

**CONCLUSION**

For the above reasons, Defendant's Motion to Suppress Evidence is GRANTED IN PART and DENIED IN PART. The Motion is granted only to the extent that Defendant's statements made during the October 13, 2005, interview with Detective Neal at the police station regarding his address, cocaine use, and marijuana use shall be excluded. An appropriate Order shall issue.